EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.*
JOSÉ JOAQUÍN APONTE, acusado y apelante.

Número 15765.

*Sometido:* 3 de diciembre de 1954. *Resuelto:* 28 de enero de 1955.

*Ubaldo Aponte,* abogado del apelante; *Hon. Secretario de Juscia José Trías Monge* y *Ramón Olivo Nieves, Fiscal Especial, Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR SIFRE emitió la opinión del Tribunal.

El apelante fué procesado en el Tribunal Superior, Sala de Guayama, por el delito de violación, perpetrado, según la acusación, el día 26 de mayo de 1953, al tener contacto carnal con la joven América Cardín Meléndez "mediante actos de fuerza y violencia e intimidación, y contra su voluntad y sin su consentimiento". Fué juzgado por tribunal de derecho, declarado convicto y sentenciado a la pena indeterminada de dos a seis años de presidio. Apeló de dicha sentencia, así como de la resolución denegando una solicitud de nuevo juicio. Señala cinco errores en apoyo del recurso.

■ Breve discusión requiere el primer error apuntado. Va dirigido a atacar la apreciación que hizo el tribunal a quo del testimonio de América Cardín Meléndez, sosteniéndose que no debió dársele crédito por ser inverosímil, y por las contradiciones en que incurriera la testigo. El señalamiento está desprovisto de méritos. No hay razón alguna para resolver que el tribunal incidió en error al darle crédito a dicho testimonio. No es éste inherentemente improbable o increíble, y las contradiciones en que incurrió la testigo, diversas en número, fueron sin duda reconciliadas por el juzgador. Debemos respetar su criterio, por la ausencia de motivos para repudiarlo.(¹)

■ Se queja el apelante en el segundo señalamiento de que se admitiera y diera crédito a la declaración de Ana Ma-

---

(¹) El Fiscal hace el siguiente resumen de la declaración de América Cardín, que es sustancialmente correcto:

"Declara la perjudicada, en esencia, que tiene 16 años de edad; que el día 26 de mayo de 1953 salió de la escuela y se encontró con el acusado quien la invitó a dar un paseo e ir a la casa de una tía a buscar un equipo; que estando ella montada en la guagua que la conduciría a su casa regresó el acusado en una guagua pequeña, la llamó y ella se fué con él a dicha guagua (T. E. 11); que en esa guagua llegaron hasta donde terminaba la carretera, regresaron y se detuvieron al lado de un callejón de cañas donde él le dijo que por allí vivía su tía (T. E. 11); que cuando ella vió que la guagua en que habían venido se iba se puso nerviosa y entonces el acusado le dió una cerveza en la cual había mezclado una píldora (T. E. 12,25,26); que él le hizo tomar dicha bebida a pesar

ría Cruz Bonilla, "a fin de establecer el requisito legal de la corroboración". Declaró ella que en la noche del día en que ocurrió el hecho imputado al apelante, América Cardín le informó que había sido ultrajada por el procesado, así como de los medios utilizados por éste para consumar el acto. Manifestó asimismo que al atardecer de ese día, llegó América Cardín a la casa de la deponente llorando y con la boca recrecida, y que al acostarse vió que aquélla no tenía ropa interior.

Se nos dice que la declaración de María Cruz Bonilla era inadmisible, *primero*, porque según el testimonio de la perjudicada, ésta le informó de lo que le había hecho el procesado, no en la noche del 26 de mayo, como depuso María Cruz, y sí al atardecer del día siguiente, o sea, veinte y seis horas después de los sucesos, no obstante haber comido y dormido en la casa de dicha testigo, prima suya, por lo cual el testimonio de María Cruz Bonilla no podía aceptarse como evidencia de corroboración por lo remoto; *segundo*, porque antes de llegar a la casa de su prima, América Cardín se había encontrado con Ángel Luis Ortiz y Manuel Guillermo Rodríguez, a quienes informó que el apelante "había abusado de ella y se había ido", dejándola sola.

No podemos convenir con el apelante. El tribunal a quo pudo haber llegado a la conclusión de que América Cardín relató los hechos a su prima, horas después de ocurrido el hecho, según fué declarado por ésta, pero suponiendo que le

de su negativa; que la pasó por unos alambres y la metió dentro del cañaveral; que la empujó hacia el suelo y le puso una pistola en el pecho; (T. E. 14) le quitó los *panties* (T. E. 28, 29), él se quitó o desabrochó los pantalones y abusó de ella; que ella estaba casi inconsciente (T. E. 29, 30, 31); que una vez terminado el acto el acusado se fué dejándola sola; pero antes había botado el refajo y los panties de ella (T. E. 17); que ella caminó hasta llegar casi a Aibonito donde encontró la guagua de Ángel Luis, que era el que la había llevado a ella y al acusado al campo; que en esa guagua iba otro pasajero de nombre Guillermo; que al chófer de la guagua, o sea a Ángel Luis fué a la primera persona que ella le dijo que el soldado había abusado de ella (T. E. 18, 56); que esa tarde ella comió y durmió en la casa de su tía; que le contó a la prima lo que le había ocurrido con el soldado (T. E. 51); que al día siguiente el padre de ella fué a buscar el refajo y los panties al cañaveral (T. E. 20, 41)."

hiciera el relato veinte y seis horas después, esa circunstancia de por sí no hacía inadmisible, como prueba de corroboración, lo declarado por María Cruz Bonilla.   Hemos establecido la doctrina de que en casos como el presente el *tiempo transcurrido entre el hecho delictivo y el momento en que se hacen manifestaciones que tienden a corroborar el testimonio de la perjudicada no es factor decisivo de por sí para determinar si son o no aceptables dichas manifestaciones como prueba de corroboración*.   *Pueblo* v. *Arenas*, 39 D.P.R. 16; *Pueblo* v. *Fuentes*, 63 D.P.R. 44.   En *Pueblo* v. *López*, 76 D.P.R. 378, nos expresamos así: "Nuestra propia jurisprudencia tiene establecido el principio que el factor tiempo no es fijo e inmutable y que puede variar de acuerdo con las circunstancias de cada caso.   Así hemos aceptado como admisibles manifestaciones de la perjudicada hechas a los tres meses, a los nueve meses y aún hasta al año después del hecho delictivo."

El que América Cardín informara a María Cruz Bonilla de lo que le había hecho el apelante, cuando ya había hablado con Ángel Luis Ortiz y Manuel Guillermo Rodríguez, no hacía inadmisible la declaración de la testigo.   Aquéllos encontraron a América Cardín, cuando transitaba por la carretera, sola y llorando, en dirección al pueblo de Aibonito, diciéndoles que el procesado "había abusado de ella", y les pidió que la llevaran a casa de una tía, la madre de María Cruz.   Esas manifestaciones, lejos de estar en conflicto con las que le hiciera a su prima, coinciden perfectamente con ellas, y las unas y las otras se robustecen entre sí.

En el tercer señalamiento se queja el apelante de que fué declarado culpable sin prueba que corroborara la declaración de América Cardín.   La prueba en ese sentido fué amplia y suficiente.   El error apuntado no fué cometido.

El cuarto señalamiento, en el que se sostiene por el apelante que la sentencia es contraria a "la prueba y a la ley" está totalmente desprovisto de méritos.

██ Presentó el apelante una moción solicitando nuevo juicio alegando que con posterioridad a su convicción había descubierto nueva evidencia, que no pudo presentar en el juicio. La moción fué denegada, y es ése el error que apunta en el quinto y último señalamiento. Hemos resuelto en más de una ocasión, que una solicitud de nuevo juicio fundada en el descubrimiento de nuevas pruebas va dirigida a la sana discreción del tribunal. No hay nada que demuestre que se abusó de ella en el caso de autos.

*La sentencia deberá ser confirmada.*

El Juez Asociado Sr. Belaval concurre en los resultados. tados.